UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
PRICASPIAN DEVELOPMENT CORPORATION      :
(TEXAS),                                :
                       Plaintiff,       :     08 Civ. 9726 (DLC)
                                        :
            -v-                         :     OPINION & ORDER
                                        :
ROYAL DUTCH SHELL, plc,                 :
                       Defendant.       :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Daniel L. Abrams
Law Office of Daniel L. Abrams, PLLC
2 Penn Plaza, Suite 1910
New York, NY 10121

For Defendant:
Graham Kerin Blair
David A. Brakebill
Baker & McKenzie LLP
711 Louisiana, Suite 3400
Houston, TX 77002

Grant Hanessian
John Bassinger
Baker & McKenzie LLP
1114 Avenue of the Americas
New York, NY 10036

DENISE COTE, District Judge:

        Plaintiff Pricaspian Development Corporation ("Pricaspian")

brings this declaratory judgment action for expected unjust

enrichment against defendant Royal Dutch Shell, plc ("RDS").

Pricaspian alleges that RDS, in violation of an agreement-in-

principle "Shell" had with Pricaspian, cut Pricaspian out of a

deal for profits from oil exploration in an offshore oil field near northwestern Kazakhstan known as "Greater Kashagan." Defendant moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6), arguing principally that Pricaspian's claims are barred by the doctrine of claim preclusion (also referred to as the doctrine of res judicata).  For the following reasons, defendant's motion is granted.


BACKGROUND

     The following facts are taken from the complaint in this action, except where noted, and are presumed to be true for the purposes of this motion.  Pricaspian is a Texas corporation with its principal place of business in Colorado.  RDS was incorporated in 2002, and given the name RDS in 2004.  See RDS Certificate of Good Standing.[1]  RDS operates "a vast vertically integrated enterprise to explore, develop, produce, refine, market and transport," inter alia, oil and natural gas.

     Pricaspian's predecessor in interest was Jack J. Grynberg and affiliated corporations.  In 1989 and the early 1990s, Grynberg developed a close personal relationship with political leaders in Kazakhstan.  As a result of this relationship,

---

[1] The parties agree that the Court may take judicial notice of the certificate of good standing pursuant to Fed. R. Evid. 201(b).

Grynberg was given access to certain "top-secret Soviet geophysical data in Moscow," including data on the Caspian Sea.

On or about July 17, 1990, Grynberg told "Shell" that the Republic of Kazakhstan was interested in partnering with a group of western oil companies to be organized by Grynberg, and that a large area in Kazakhstan known as the "Area of Mutual Interest" ("AMI") contained large deposits of oil and natural gas. Specifically, two "Shell-affiliated" representatives went to Grynberg's Colorado offices and were "presented with confidential maps, geologic, seismic, and economic data that persuaded them, on behalf of Shell, to enter into an agreement in principle with Grynberg" related to the development of oil and natural gas in the AMI.  As part of the agreement between Shell and Grynberg, in exchange for access to Grynberg's confidential data, Grynberg was to have a right to a share of the profits from oil and natural gas production in accordance with any subsequent agreement made with the government of Kazakhstan.  Grynberg has since assigned 99% of this interest to Pricaspian.  Grynberg cites industry press to estimate that the oil field within the AMI known as Greater Kashagan will become profitable in 2014.

RDS, however, went around Grynberg and directly to Kazakhstan officials, cutting Grynberg "out of the deal."  On October 31, 2008, a group of Western oil companies, including

RDS, signed an agreement (the "October 2008 Agreement")
concerning the development of Greater Kashagan with the
Kazakhstan government.  This October 2008 Agreement puts RDS's
interest at 16.81%.

Pricaspian claims in this action, a declaratory judgment
action for expected unjust enrichment, that it is entitled to
20% of RDS's net profits received pursuant to the October 2008
Agreement.  Pricaspian also claims, seeking a declaratory
judgment for expected unjust enrichment, that it is entitled, at
the time any such profits are realized, to 20% of RDS's net
profits related to the Greater Kashagan oil field.

The motion to dismiss is premised on a statute of
limitations summary judgment two Shell entities won in Colorado
in 2006.  In July 2003, Grynberg, Grynberg Production
Corporation and its successors, and Grynberg Petroleum Company
and its successors (collectively, "Grynberg"), filed suit in the
United States District Court for the District of Colorado
against Royal Dutch Petroleum Company ("Royal Dutch") and Shell
Transport and Trading Company ("Shell Transport").  The original
complaint referred to these two defendants collectively as
"Shell."  In the course of the litigation before the District
Court of Colorado, Grynberg added three Shell subsidiaries as
defendants.  Grynberg's Second Amended Complaint (the "Colorado
Complaint") therefore named five defendants: Royal Dutch and

4

Shell Transport (collectively, the "Shell Parent Entities") and three subsidiaries (the "Shell subsidiaries").[2]  The Colorado Complaint noted that these five defendants were "sometimes referred to altogether as 'Shell.'"  The Colorado Complaint alleged that Royal Dutch and Shell Transport jointly controlled approximately 1370 subsidiaries worldwide.  It further alleged that the three subsidiary defendants were "wholly owned subsidiaries of Royal Dutch and Shell Transport, and all three are completely dominated and controlled by Royal Dutch and Shell Transport."

In the Colorado Complaint, the plaintiffs claimed against "Shell," which they specifically noted included "all five corporate defendants," for, inter alia, unjust enrichment under Colorado law.  The complaint alleged that "Shell appropriated to itself the value of Grynberg's work and confidential information" that led to an oil and natural gas discovery in the Caspian Sea, offshore of Kazakhstan.  Specifically, the complaint alleged that as a result of wrongly appropriating Grynberg's confidential data, Shell had acquired "an oil and natural gas interest" in Kazakhstan, known as, inter alia, the Kashagan, as well as other prospects in the AMI.

---

[2] The three subsidiaries were Shell Petroleum N.V., Shell Exploration B.V., and Shell International Exploration and Production B.V. f/k/a Shell International Production Maatschappij B.V.

The Colorado Complaint also recounted how, on or about July 17, 1990, Grynberg presented two representatives of Shell with confidential maps and other data that persuaded them, on behalf of Shell, to enter into an agreement in principle with Grynberg "related to the development of a profitable and potentially gigantic oil and natural gas industry in the AMI in Kazakhstan." The complaint also explained how Shell, after using Grynberg's information, then went around Grynberg to Kazakhstan directly, "cutting Grynberg out of the entire deal."

Specifically, Grynberg alleged that on November 18, 1997, Shell and other oil companies struck a deal with the Republic of Kazakhstan (the "November 1997 Agreement"), a copy of which was attached to Grynberg's complaint, to "take oil and natural gas production from the [AMI], and to therefore profit immensely from Grynberg's efforts on their behalf."  The complaint alleged that under Grynberg's agreement with Shell and other oil companies, Grynberg was not entitled to payment until the production of the oil and gas became profitable, and the "earliest time that this could have occurred in the Kashagan field, Kazakhstan, was when Shell and others declared that field 'commercial' in 2002."  The complaint alleged that Shell's actions in November 1997 violated the 1990 agreement-in-principle, and that Shell had been unjustly enriched "by acquisition of an asset valued in excess of ten (10) billion

dollars that was discovered and delivered to it by Grynberg.  To date, Shell has neither paid nor informed Grynberg that it intends to pay for his vital efforts in securing Shell's profitable asset in Kazakhstan."

In the Colorado Complaint, Grynberg alleged that as part of the agreement in principle, he "was to receive a 20% carried working interest in the AMI."  He claimed against Shell for unjust enrichment, alleging that Shell had "used a benefit provided by Grynberg in an unauthorized and unfair manner" by using Grynberg's confidential information, and had "retained that benefit conferred on it without paying fair compensation for it."  In calculating the value of Shell's interest in the AMI, Grynberg based his computations on, inter alia, the number of barrels of oil estimated to be in the Kashagan field, and Grynberg arrived at an estimate of ten billion dollars for "the gross value of Shell's interest in the AMI including all discoveries."  (Emphasis supplied).  Grynberg's complaint sought 20% of "the fair market value of Shell's interest."  Grynberg noted that he had no knowledge of the split of profits between the five defendants named in the complaint "derived from Shell's wrongful conduct," because such information was controlled by the defendants, and that therefore the causes of action were asserted against "'Shell' for convenience."  (Emphasis supplied).

In August 2004, the district court dismissed the Shell Parent Entities and one of the subsidiaries for lack of personal jurisdiction (the "August 2004 Decision").  As to the Shell Parent Entities, they had argued that they were "three levels removed from the corporate entities that operate in Colorado," and the court found that the subsidiaries in Colorado had independent operation and management from the Shell Parent Entities.  The Court also found that the plaintiffs had not met with "well-pled allegations or competent evidence the assertion" that the two representatives that were allegedly working for Shell in fact acted on behalf of entities other than the Shell Parent Entities.

In June 2006, the district court ruled on cross-motions for summary judgment, granting the two remaining Shell subsidiaries' motions for summary judgment on statute of limitations grounds. Grynberg v. Shell Exploration B.V., 433 F. Supp. 2d 1229, 1230 (D. Colo. 2006) ("June 2006 Decision").  The court, sitting in diversity and applying Colorado law, found that "[i]t is beyond dispute that the claims accrued, and the three-year limitations period commenced, when Mr. Grynberg and the plaintiffs knew or had reason to know of the existence and cause of the injury which is the basis of their action." Id. at 1233.  The court framed the inquiry as follows:

> If, as the defendants argue, the plaintiffs were injured
> when [one of the subsidiaries] used Mr. Grynberg's
> purportedly confidential information to solicit Kazak
> sanction, then the claims here accrued on June 9, 1993,
> or at the latest on December 3, 1993, when reports of a
> consortium assembled without Mr. Grynberg's involvement
> circulated in the international press.  If the injury
> occurred when the oil companies agreed with Kazakhstan
> to exploit the Kashagan Field, then the claims accrued
> when Mr. Grynberg through the exercise of reasonable
> diligence should have discovered the existence of the
> [November 1997 Agreement].  If, as the plaintiffs argue,
> the injury was inchoate until the oil partners declared
> the Kashagan Field commercial on June 28, 2002, then the
> claims are timely.

Id.  Reasoning that defendants received a benefit when the oil
companies agreed to exploit the Kashagan field and create shares
of rights in the November 1997 Agreement, id. at 1234-35, and
that Grynberg had admitted to knowing of that agreement in the
1990s, id. at 1235, the court found that the unjust enrichment
claims had accrued more than three years before the filing of
the 2003 action.

The Tenth Circuit affirmed this conclusion in an August
2008 opinion that addressed Grynberg's claims against Shell and
another oil company, Total S.A.  Grynberg v. Total, S.A., 538
F.3d 1336 (10th Cir. 2008) ("Tenth Circuit Decision,"
collectively with the June 2006 Decision, the "Statute of
Limitations Decision"), cert. denied, 129 S. Ct. 1585 (2009).
The court, in addressing the unjust enrichment claim, first
noted that "Grynberg's complaints can only be read as claiming
an entitlement to a share of the defendants' benefits throughout

9

the entire AMI, not just the Kashagan Field. . . .  Thus, the
unjustly retained interest need only be somewhere within the
AMI; it is not restricted to the Kashagan Field." Id. at 1352
(emphasis supplied).  The court then proceeded to reject
Grynberg's argument "that the defendants would not have done
anything improper -- and therefore would not be unjustly
enriched -- until they refused to pay Grynberg . . . when they
started receiving profits from production of oil and gas in the
AMI." Id. at 1352.

        The Tenth Circuit found that for an unjust enrichment
claim, "the benefit to a defendant is what matters, not the
breach of a promise to pay that is not the basis of the claim,"
id., and "[t]he defendants were unjustly enriched, according to
the theory of the complaints, when they obtained a benefit by
appropriating Grynberg's confidential information and efforts."
Id. at 1352-53.  Thus, the court concluded that "Grynberg had an
unjust-enrichment claim when Shell . . . obtained a benefit -- a
valuable interest -- in the AMI.  And, . . . Shell . . .
certainly had such an interest when [it] executed the [November
1997 Agreement]." Id. at 1353.  As such, the court found the
unjust enrichment claim untimely by applying Colorado's statute
of limitations and laches doctrine.  Id. at 1354.

DISCUSSION

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  This rule "does not require 'detailed factual allegations,'" id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555); see also Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 555 U.S. at 557).

A court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted).  To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 555 U.S. at 570).  This "plausibility standard

11

is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted).

The Supreme Court in Iqbal summarized the "[t]wo working principles that underlie" Twombly: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Applying this second principle "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Thus, the Supreme Court set out a "two-pronged" approach for courts deciding a motion to dismiss:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

A court may also consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" on a motion to dismiss. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). In

addition, "[r]es judicata challenges may properly be raised via
a motion to dismiss . . . under Rule 12(b)(6)."  Thompson v.
County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994); see also
Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (while res
judicata is an affirmative defense that ordinarily must be pled
in the defendant's answer, "when all relevant facts are shown by
the court's own records, of which the court takes notice, the
defense may be upheld on a Rule 12(b)(6) motion").


A.   Preclusion and Choice of Law

     RDS argues principally on the instant motion that
Pricaspian's claims in this action are barred by the doctrine of
claim preclusion, contending that the statute of limitations
summary judgment in federal court in Colorado bars the instant
claims from being relitigated.  Both parties agree, citing
Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497
(2000), that this Court applies federal common law to determine
the preclusive effect of a previous federal court judgment, and
that where the earlier federal court judgment is in a diversity
case, "federal law incorporates the rules of preclusion applied
by the State in which the rendering court sits."  Taylor v.
Sturgell, 128 S. Ct. 2161, 2171 n.4 (2008) (citing Semtek, 531
U.S. at 508).  In Colorado (the state in which the rendering
court sat) "[c]laim preclusion, or res judicata, constitutes an

absolute bar to relitigation only when, in both the prior and subsequent suits, there is identity of subject matter, identity of cause of action, identity of parties to the action, and identity of capacity in the persons against whom the claim is made." Upper Eagle Regional Water Authority v. Simpson, 167 P.3d 729, 736 (Colo. 2007) (en banc); see also Argus Real Estate, Inc. v. E-470 Public Highway Authority, 109 P.3d 604, 608 (Colo. 2005) (stating the elements of claim preclusion as "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions" and noting that "[c]laim preclusion works to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not").

Where the issue is, as in the instant case, a question of the preclusive effect of the rendering court's judgment that is based on statute of limitations grounds, however, Semtek makes clear that the issue is not simply applying the rendering state's test for preclusion, but the inquiry is what the rendering state's preclusion law says regarding the "claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods." 531 U.S. at 504 (emphasis added). In Semtek, the Supreme Court was faced with a situation in which a Maryland state court had dismissed a case on claim preclusion

grounds because of an earlier judgment, on statute of limitations grounds, from a federal court sitting in diversity in California.  Id. at 499-500.  The court stated that as to the issue of the claim-preclusive effect of statute of limitations decisions,

> the traditional rule is that expiration of the
> applicable statute of limitations merely bars the remedy
> and does not extinguish the substantive right, so that
> dismissal on that ground does not have claim-preclusive
> effect in other jurisdictions with longer, unexpired
> limitations periods.  See Restatement (Second) of
> Conflict of Laws §§ 142(2), 143 (1969); Restatement of
> Judgments § 49, Comment a (1942).

Semtek, 531 U.S. at 504.  The Supreme Court remanded for the Maryland court to look to California's claim preclusion law to determine whether a statute of limitations decision in California would have claim-preclusive effect in Maryland.  Id. at 509; see also Smith v. Woosley, 399 F.3d 428, 435 (2d Cir. 2005).

Similarly, in Smith v. Woosley, 399 F.3d 428, the Second Circuit cited Semtek for the proposition that "a district court's dismissal of claims as time-barred is not necessarily the type of merits decision that has preclusive effect in subsequent litigation."  Id. at 434-35.  The court therefore endeavored to look to the preclusion law of the state in which the rendering court sat (Pennsylvania) to assess whether that state would find that a statute of limitations decision had

preclusive effect in other jurisdictions, but the court "located
no Pennsylvania state court decision determining whether
Pennsylvania state courts deem a limitations dismissal as
barring only the remedy or barring the pursuit of the claim even
in jurisdictions with longer limitations periods."  Id. at 435.
The court found that it need not conclusively determine that
issue because the court could find no jurisdiction in which the
party would be able to bring its claims as timely under those
jurisdictions' own statutes of limitations.  Id. at 436.

Colorado subscribes to the "traditional rule," as explained
in Semtek, that "expiration of the applicable statute of
limitations merely bars the remedy and does not extinguish the
substantive right."  531 U.S. at 504.  Under Colorado law, "a
statute of limitations does not bar the right of action, but
only the remedy."  Matter of Estate of Hall, 948 P.2d 539, 541
n.3 (Colo. 1997) (citing In re Estate of Randall, 441 P.2d 153,
155 (1968)); see also Moore's Federal Practice,
§ 131.30[3][g][ii] (3d ed. 2000) (as to the question of the
preclusive effect of a prior judgment dismissing a claim on
statute of limitations grounds, "the majority of statutes of
limitations are considered to be procedural, barring only the

remedy and not the claim and leaving the plaintiff who is barred free to seek out another forum with a more hospitable statute").[3]

In light of the above, the Court cannot conclude, as defendant contends, that the Court can simply apply the test for claim preclusion under Colorado law to the instant case, with no need to look to the forum state's statute of limitations.  New York's limitations period law, however, brings the Court back to consideration of the Colorado decision.

In diversity cases, "state statutes of limitations govern the timeliness of state law claims." Schermerhorn v. Metro. Transp. Auth., 156 F.3d 351, 354 (2d Cir. 1998) (citation omitted).  State law also determines the "commencement of the limitations period." Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002).  In addition, a declaratory judgment action, which is "a procedural device used to vindicate substantive rights," is time-barred if "relief on a direct claim based on such rights would also be barred." Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992).

---

[3] RDS's argument that the Semtek analysis is unnecessary in the instant case because Semtek involved a dismissal on statute limitations grounds, whereas the prior judgment in the instant case was a grant of summary judgment on statute of limitations grounds, is unpersuasive.  Whether the decision is a dismissal or summary judgment, if it is based on the rendering state's statute of limitations, then the question is what kind of preclusive effect a state gives such a decision, i.e., whether the rendering state follows the tradition rule, or whether it would find that a limitations decision would be preclusive even in jurisdictions with longer limitations periods.

"To determine which state's law applies, a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits." Cantor Fitzgerald Inc., 313 F.3d at 710 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). New York applies a "borrowing statute," N.Y. C.P.L.R. Section 202, for actions filed by a non-resident. Cantor Fitzgerald, 313 F.3d at 710. In such actions, New York applies the shorter of the statute of limitations between New York and the place where the cause of action accrued.

> An action based upon a cause of action accruing without
> the state cannot be commenced after the expiration of
> the time limited by the laws of either the state or the
> place without the state where the cause of action
> accrued, except that where the cause of action accrued
> in favor of a resident of the state the time limited by
> the laws of the state shall apply.

N.Y. C.P.L.R. Section 202.

"New York follows the traditional definition of accrual -- a cause of action accrues at the time and in the place of the injury." Cantor Fitzgerald, 313 F.3d at 710 (citing Global Fin. Corp. v. Triarc Corp., 715 N.E.2d 482, 485 (N.Y. 1999)). In cases, such as this one where the plaintiff alleges only economic injuries, "the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Id. (citing Global Fin. Corp., 715 N.E.2d at 485). A corporation sustains economic injury in the states where it is

incorporated and has offices.  See, e.g., id. (Nevada corporation with offices in California sustained economic injury in both states).

Since Pricaspian operates in Colorado, any injuries it sustained took place in Colorado.[4]  According to Section 202, therefore, the shorter statute of limitations for unjust enrichment actions between New York and Colorado law will apply. In other words, if Pricaspian's claim is not timely in Colorado, then it is untimely in New York even if New York would have a longer limitations period.  In addition, under the borrowing statute, the Court looks to Colorado law to see when the limitations period began to run.  Id.

As discussed above, the District Court in Colorado, affirmed by the Tenth Circuit, already determined that Pricaspian's claims in the Colorado Complaint were untimely under Colorado law.  Thus, if the elements for applying claim preclusion are met, the previous determination on Colorado statute of limitations grounds will preclude Pricaspian's claims.  RDS bears the burden of proving that claim preclusion applies to bar the instant action.  See Computer Associates Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997);

---

[4] Although Pricaspian is incorporated in Texas, the company did not sustain injuries in that state.  Neither party argues that Texas's statute of limitations should apply.

Meyer v. State, Dep't of Revenue, Motor Vehicle Div., 143 P.3d
1181, 1184 (Colo. Ct. App. 2006).

B.  Identity of Parties

Pricaspian argues that claim preclusion cannot apply to
the Colorado statute of limitations decision to bar its claims
because there is no identity of parties as required under
Colorado law.  Specifically, Pricaspian argues that there is no
identity of parties between the Shell defendants that won the
Colorado statute of limitations judgment and the defendant in
the instant action, RDS.[5]

For a previous judgment to have claim-preclusive effect
under Colorado law, "the parties [must] be the same as those in
the first action or persons in privity with them."  Cruz v.
Benine, 984 P.2d 1173, 1176 (Colo. 1999).  This identity of
parties requirement "is intended to avoid penalizing one who did
not appear."  Foley Custom Homes, Inc. v. Flater, 888 P.2d 363,
365 (Colo. Ct. App. 1994).  "Privity between a party and a non-
party requires both 'a substantial identity of interests' and a
working or functional relationship in which the interests of the
non-party are presented and protected by the party in the
litigation."  Cruz, 984 P.2d at 1176; see also Public Service

---

[5] Pricaspian does not contest that there is an identity of
parties between itself and the plaintiffs in the prior action.

Co. of Colorado v. Osmose Wood Preserving, Inc., 813 P.2d 785,
787 (Colo. Ct. App. 1991) ("Privity exists when there is a
substantial identity of interests between a party and a non-
party such that the non-party is virtually represented in
litigation." (citation omitted)).  "In analyzing privity for
purposes of res judicata, a court should look to the underlying
relationship of the parties," and should look to see if there
was any "indication . . . that the resolution of the previous
action [for the defendants] was intended to release [the
defendant in the second action] from liability in any later
case."  Turkey Creek Ltd. Liability Co. v. Anglo America Consol.
Corp., 43 P.3d 701, 703 (Colo. Ct. App. 2001).

> A functional relationship may be found if a non-party
> substantially participates in controlling the
> presentation of issues as if it were a party. . . .  A
> finding of privity is simply a conclusion that
> something in the relationship of party and non-party
> justifies holding the latter to the result reached in
> litigation in which only the former is named.

Public Service Co. of Colorado, 813 P.2d at 788 (citation
omitted).[6]

The "underlying relationship" of the parties supports a
finding that the Shell subsidiaries and RDS are in privity.  In
Strekal v. Espe, 114 P.3d 67 (Colo. Ct. App. 2004), the Colorado

---

[6] While the issue of privity for claim preclusion purposes is a
question of fact for the court, Antelope Co. v. Mobil Rocky
Mountain, Inc., 51 P.3d 995, 1002 (Colo. Ct. App. 2001), where
the facts are undisputed the issue may be susceptible to being
resolved on a motion to dismiss.

Court of Appeals noted that "privity exists when the nonparty's interests are actually represented in the first action," and cited with approval a case in which a "prior contract action against [a] corporate subsidiary protect[ed the] corporate parent" by applying claim preclusion.  Id. at 70; see also In re Teletronics Servs., Inc., 762 F.2d 185, 191-92 (2d Cir. 1985) (finding privity between parent and wholly-owned subsidiary); Lufti v. Dow Jones, 95 Civ. 8779, 1996 WL 343065(RPP), at *2 (S.D.N.Y. June 20, 1996) ("[A] corporate parent is deemed to be in 'privity' with its subsidiary when it sufficiently represents that subsidiary's interests"), aff'd, 107 F.3d 3, 1997 WL 32925 (2d Cir. 1997) (unpublished summary order).  RDS is the corporate parent of the Shell subsidiaries, and as such, RDS is in privity with the Shell subsidiaries who won the statute of limitations judgment.  Thus, there is an identity of parties sufficient to satisfy that element of claim preclusion as to the statute of limitations summary judgment.

Further application of Colorado's functional test demonstrates that RDS's interests were presented and protected by the Shell defendants who were the beneficiaries of the Colorado statute of limitations judgment.  This is amply illustrated by the Colorado Complaint itself.  The claims in that complaint were asserted generally against "Shell," an amalgamation of the five named defendants.  The factual basis

for the complaint did not differentiate the alleged wrongdoing
by defendant, but simply claimed that "Shell" cut Grynberg out
of the Kazakhstan deal and was therefore unjustly enriched.  The
relief sought was 20% of "Shell's" interest in the AMI.  The
defendants were all in the same position relative to the relief
sought, and therefore the Shell Parent Entities' interests (and
thereby RDS's) were represented by the Shell subsidiaries in the
litigation related to the statute of limitations issue.[7]
Similarly, nothing in the Statute of Limitations Decision was
specific to the Shell subsidiaries; even though the Shell Parent
Entities were no longer in the case, the relief sought was still
20% of "Shell's" interest in the AMI.  This fusing of the
defendants into "Shell" in the Colorado Complaint, especially in
the factual narrative explaining the basis for the unjust
enrichment claim, demonstrates that the Shell Parent Entities
(and therefore RDS) and the defendants that were the subject of
the Statute of Limitations Decision had the requisite functional
relationship to support a finding of privity under Colorado law.

An additional indicator of the privity between the
subsidiary defendants that received the statute of limitations
summary judgment and the Shell Parent Entities (and RDS), which

---

[7] As discussed above, the Shell subsidiaries were not even
originally named as defendants in the case, but rather the same
allegations as in the Second Amended Complaint were pled against
solely the Shell Parent Entities in the original complaint.

can be shown where "a non-party substantially participates in
controlling the presentation of issues as if it were a party,"
Public Service Co. of Colorado, 813 P.2d at 788 (citation
omitted), is the fact that the subsidiaries and Shell Parent
Entities were all represented by the same attorney together in
the very same action in the Colorado litigation.[8]  See Ruiz v.
Commissioner of Dept. of Transp. of City of New York, 858 F.2d
898, 903 (2d Cir. 1988) (finding privity under New York law in
part because parties had the same attorney).

Pricaspian's principal argument against finding an identity
of parties between RDS and the defendants who were the
beneficiaries of the statute of limitations judgment is the fact
that the Shell Parents entities vigorously tried to assert their
corporate separateness from the subsidiaries in securing the
Shell Parent Entities' dismissal on personal jurisdiction
grounds.  The fact that the Shell Parent Entities argued that
they were separate from the subsidiaries and that the
subsidiaries were not their agents such that personal
jurisdiction over the Shell Parents in Colorado would not be
appropriate does not preclude a finding of privity for claim
preclusion purposes.  The tests for exercising personal
jurisdiction over a parent based on its subsidiary's activities

---

[8] The same attorney now also represents RDS in the instant
action.

in a state and for establishing privity for claim preclusion purposes may weigh many of the same factors, but they are different tests.  Compare SGI Air Holdings II LLC v. Novartis Int'l AG, 239 F. Supp. 2d 1161, 1165 (D. Colo. 2003) (personal jurisdiction inquiry focuses on whether subsidiary's activities "are of such a character as to amount to doing business of the parent"), with Cruz, 984 P.2d at 1176.

A related argument made by Pricaspian is that RDS as the current ultimate Shell parent entity should not be able to hide behind the Shell Parent Entities' jurisdictional dismissal.  It is true that "res judicata is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action."  Computer Associates, 126 F.3d at 370 (absence of personal jurisdiction over defendant in first action precluded application of res judicata); see also Herero People's Reparations Corp. v. Deutsche Bank, A.G., 370 F.3d 1192, 1196 n.3 (D.C. Cir. 2004) (if defendant wanted to enjoy the possible preclusive effects of the dismissal, "it should have waived lack of personal jurisdiction"); Vincent v. Clean Water Action Project, 939 P.2d 469, 473 (Colo. Ct. App. 1997) ("The defense of res judicata does not apply when the initial forum lacked the authority to award the full measure of relief sought in the later litigation.").

25

In Computer Associates, however, the Court of Appeals did
not consider whether the defendant that was not subject to
personal jurisdiction in the first action was in privity with
the defendant that was subject to jurisdiction.  The district
court, however, had found both that there was no likely
jurisdiction over the defendant and that that defendant was not
in privity with the defendant over which there was jurisdiction.
See Computer Associates Int'l, Inc. v. Altai, Inc., 950 F. Supp.
48, 52 (E.D.N.Y. 1996).  In this case, Pricaspian was able to
litigate its claims against the Shell subsidiaries, who were in
privity with the Shell Parent Entities (and RDS), including its
claim that it was entitled to 20% of "Shell's" profits.  The
personal jurisdiction dismissal, therefore, did not foreclose
Pricaspian from presenting the claims and theories in its
complaint to the Colorado courts.


C.   Identity of Claims and Subject Matter

Under Colorado law, "[i]n analyzing whether there exists
identity of claims for relief, . . . the inquiry does not focus
on the specific claim asserted or the name given to the claim."
Argus, 109 P.3d at 608-09.  "Instead, the same claim or cause of
action requirement is bounded by the injury for which relief is
demanded, and not by the legal theory on which the person
asserting the claim relies." Id. at 609 (citation omitted).

26

The question in the identity of claims context "is whether, in
the second action, the plaintiff is seeking a remedy against the
defendant 'with respect to all or any part of the transaction,
or series of connected transactions, out of which the first
action arose.'" Camus v. State Farm Mut. Auto. Ins. Co., 151
P.3d 678, 680 (Colo. Ct. App. 2006) (quoting Argus, 109 P.3d at
609 (quoting Restatement (Second) of Judgments § 24 (1982))).
"Whether a claim arises from the same transaction is determined
pragmatically, giving weight to whether the facts are related in
time, space, origin, or motivation, whether they form a
convenient trial unit, and whether their treatment as a unit
conforms to the parties' expectations." Id. (citation omitted).
Finally, claim preclusion "bars relitigation not only of all
claims actually decided, but of all claims that might have been
decided if the claims are tied by the same injury." Argus, 109
P.3d at 609.

Applying these principles, Pricaspian's claim in this
action is the same as his claim in the Colorado action.  In that
action, Grynberg alleged that two representatives of Shell were
shown his confidential maps and data, agreed to a deal that
would give Grynberg a 20% "carried working interest in the AMI,"
but then Shell cut Grynberg out of the deal and was thereby
unjustly enriched.  The claim in this action is the same: it is
based not just on facts that are related in time, space, and

27

origin, but on the same exact factual narrative.  The fact that Grynberg in the first action sued for unjust enrichment, whereas the claim here is for "expected unjust enrichment," does not change this conclusion.  By looking past the labels for the claim and focusing on the relief sought, it is clear that both claims seek the same relief -- 20% of Shell's interest in Kashagan and the AMI.

Pricaspian argues that claim preclusion cannot apply because the claims asserted here are based on activity that occurred after the Colorado lawsuit, citing S.E.C. v. First Jersey Securities, Inc., 101 F.3d 1450 (2d Cir. 1996), for the proposition that "[i]f the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion."  Id. at 1464.  In First Jersey Securities the court found that the SEC's "claim that [defendant] defrauded customers in the sale, purchase, and repurchase of certain securities in 1975-1979 is not the same as the claim that [defendant] defrauded customers in the sale, purchase, and repurchase of other securities in 1982-1985."  Id.

The principal that First Jersey Securities stands for is that "[w]here the facts that have accumulated after the first action are enough on their own to sustain the second action, the new facts clearly constitute a new 'claim,' and the second action is not barred by res judicata."  Storey v. Cello

28

Holdings, L.L.C., 347 F.3d 370, 384 (2d Cir. 2003).  On the other hand, "claim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim."  Id. (emphasis supplied). Where "it is simply not plausible to characterize [the new] claim as one based in any significant way upon the post-[previous claim] facts," the new facts do not bar application of claim preclusion.  Waldman v. Village of Kiryas Joel, 207 F.3d 105, 113 (2d Cir. 2000).  In other words, if the new facts are "nothing more than additional instances of what was previously asserted," and the plaintiff has "based his [second] action principally upon the common nucleus of operative facts shared with" the previous action, claim preclusion applies.  Id.

    Pricaspian alleges that the October 2008 Agreement, which governs RDS's and others' rights in Kashagan, shows that RDS has committed new acts subsequent to the previous suit that form the basis of the claims in the instant complaint.[9]  The fact that RDS

_____

[9] RDS states that this "new deal" is merely a supplement to the November 1997 Agreement.  While not attaching a copy of the October 2008 Agreement because it contains confidential information, counsel for RDS states that the actual title of the October 2008 Agreement is the "October 31, 2008 Second Supplemental Agreement to the Production Sharing Agreement in Respect of the North Caspian Sea, dated as of 18 November 1997." On a motion to dismiss, however, without a copy of the document itself, the October 2008 Agreement must be characterized consistently with the complaint, which simply states that RDS is a party to the October 2008 Agreement without any reference to the 1997 Agreement.

may have entered into a 2008 Agreement giving it a certain percentage interest in the area vis-à-vis other companies is not enough to support an independent claim for unjust enrichment where Grynberg's previous claim was for 20% of Shell's interest based upon the same underlying breach of Shell's purported commitment to Grynberg.  The essential facts of the present claim, including the use of Grynberg's confidential information to get a valuable interest in the AMI, were the basis for the Colorado action and decision.

Moreover, even if the October 2008 Agreement is a "new deal," it sets forth Shell's interest, vis-à-vis other oil companies, in the Kashagan oil field.  This is precisely the same interest of which Grynberg sought to recover 20% in the Colorado action.  These overlapping facts demonstrate that the claim in the instant action is based "principally upon the common nucleus of operative facts shared with" the claim in the Colorado action.  Waldman, 207 F.3d at 113.

In a related argument, Pricaspian argues that there is no identity of subject matter, because his claims in this action are based on the theory that RDS has wrongfully acquired its trade secrets.  As discussed above, however, asserting a new legal theory will not avoid the application of claim preclusion. Pricaspian itself describes the subject matter of this action as being about RDS obtaining valuable confidential information from

Pricaspian in exchange from promising Pricaspian "a 20% interest in any net profits arising out of any deal within the AMI."

Pricaspian also tries to differentiate the instant claim by arguing that the instant claim for declaratory judgment could not have been brought in the previous action.  The Colorado complaint, however, was for 20% of Shell's interest, which Grynberg calculated to be $10 billion based on the total amount of recoverable oil in the entire Kashagan field and the value of the AMI "including all discoveries."  Even at the time of the Colorado complaint, no oil had been pumped, and thus the claim was for 20% of Shell's interest that was based upon a calculation of Shell's future profits.  Grynberg's claim in the instant case that damages will not accrue until Kashagan is expected to "show a net profit" does not differentiate his claim from the claim adjudicated in the previous action or claims that could have been adjudicated in that action.[10]

_____

[10] Pricaspian also cannot avoid the application of the New York borrowing statute by arguing that his claims have not yet accrued "anywhere," when the previous action determined that his claims for unjust enrichment, which are the same claims he asserts here, accrued in Colorado no later than 1997. Pricaspian's argument that his claims do not accrue until Shell turns a profit was specifically rejected by the Colorado courts, which found that Pricaspian's claims for unjust enrichment arising out of Grynberg's and Shell's dealings accrued in Colorado no later than 1997, and Pricaspian is collaterally estopped from litigating this determination.  Gallegos v. Colorado Ground Water Comm'n, 147 P.3d 20, 32 (Colo. 2006) (elements of collateral estoppel).

Thus, Pricaspian's claims are barred by application of the borrowing statute and the doctrine of claim preclusion, and the complaint must be dismissed. In light of this conclusion, RDS's alternate arguments for dismissal need not be addressed.

CONCLUSION

Defendant's February 12, 2009 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendant and close the case.

SO ORDERED:

Dated:   New York, New York
         June 3, 2009

                                    _____

                                    DENISE COTE
                                    United States District Judge

32